UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PAM HOOTEN                                                                                          PLAINTIFF

V.                                 CASE NO. 3:16-CV-302-BD

NANCY A. BERRYHILL, Acting Commissioner,
Social Security Administration                                                       DEFENDANT

# ORDER

## I. Introduction:

Plaintiff, Pamela Gail Hooten, applied for disability income benefits ("DIB") on May 1, 2014 and for supplemental security income benefits ("SSI") on May 5, 2014. (Tr. at 17) In both applications, she alleged an onset date of May 1, 2013. *Id*. Ms. Hooten's claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Hooten's application. (Tr. at 25) The Appeals Council denied her request for review. (Tr. at 1) The ALJ's decision, therefore, now stands as the final decision of the Commissioner, and Ms. Hooten has requested judicial review. For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Ms. Hooten had not engaged in substantial gainful activity since the alleged onset date of May 1, 2013. *Id.* At Step Two of the five-step process, the

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

ALJ found that Ms. Hooten has the following severe impairments: idiopathic peripheral neuropathy, morbid obesity, degenerative joint disease, and osteoarthritis. *Id*.

After finding that Ms. Hooten's impairments did not meet or equal a listed impairment (Tr. at 21), the ALJ determined that Ms. Hooten had the residual functional capacity ("RFC") to perform sedentary work, with frequent use of the hands to handle and finger, but with no concentrated exposure to cold temperatures. (Tr. at 22) The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Ms. Hooten's age, education, work experience and RFC, she was capable of performing past relevant work as a telephone representative and a computer programmer. (Tr. at 24) Based on that determination, the ALJ held that Ms. Hooten was not disabled. (Tr. at 25)

**III.  Discussion:**

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. Nevertheless, the Court cannot reverse the decision, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

A. Arguments on Appeal

Ms. Hooten argues that the RFC finding is not supported by substantial evidence and that the RFC for sedentary work with frequent fingering and handling is beyond Ms. Hooten's capabilities.

A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations. It must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). "In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [her] impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

The records from Lawrence County Family Clinic indicate that at appointments from 2012 through 2014, Ms. Hooten complained of pain in her lower extremity joints and left knee. (Tr. at 279-342). Kevin Diamond, M.D., diagnosed her with polyneuropathy, restless leg syndrome, and osteoarthritis; he prescribed Lyrica and Tramadol. (Tr. at 288, 293, 296, 302, 303). Ms. Hooten reported to Dr. Diamond that the Lyrica worked well for pain, and she reiterated that at the hearing. (Tr. at 43-44, 286).

Dr. Diamond also found Ms. Hooten to be morbidly obese and, over the course of treatment, she went from about 250 pounds to 290 pounds. (Tr. at 281, 290, 301, 304). Dr. Diamond recommended therapeutic exercise and weight loss to improve her condition. (Tr. at 284, 354) Ms. Hooten did not attend physical therapy sessions or lose

weight. A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

While Ms. Hooten complained that her pain was debilitating, musculoskeletal exams were normal on August 6, 2013, April 30, 2014, August 18, 2014, and March 12, 2015. (Tr. at 281, 290, 348, 352) She had full active range of motion in her knee and no collateral instability on January 7, 2014. (Tr. at 283-284) On only one occasion, she showed an antalgic gait. (Tr. at 352-354)

While John Woloszyn, M.D., recommended knee replacement surgery on March 12, 2015 (after x-rays showed medial joint space collapse and sclerosis with massive osteophytes), he indicated that she would not be able to proceed with surgery until she lost 50 pounds. (Tr. at 386) Her progressive weight gain over several years did not mitigate her symptoms, nor help her case for disability. Indeed, rather than undertake surgery or other invasive measures, she was treated conservatively with injections and prescription medication. The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). Again, she indicated on more than one occasion that conservative treatment with Lyrica helped with her pain.

The x-rays referenced by Dr. Woloszyn are the only objective imaging from the relevant time-period showing any musculoskeletal compromise; and mild clinical findings and normal musculoskeletal exams throughout the record render that snapshot

4

imaging less persuasive. Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

Indeed, Ms. Hooten relies almost entirely on subjective complaints to support her disability claim. The ALJ properly evaluated those complaints in the face of evidence which detracted from her allegations. Before coming to a conclusion on a claimant's credibility, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including prior work record, as well as observations by third parties and treating and examining physicians regarding: the claimant's daily activities; the duration, frequency and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

Ms. Hooten's work history was limited. She indicated that, although she had a master's degree, she could not find a job because "the world passed [her] by as far as computer technology." (Tr. at 36). Despite her efforts, she could not find a job as a substitute teacher, and worked only 90 hours in several months as a telephone representative. (Tr. at 37-39). Ceasing work for reasons other than alleged disability undermines a claimant's claim that her impairments are disabling. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

Moreover, Ms. Hooten indicated she could undertake a variety of daily activities. She could attend to all personal care, cook three meals a day for herself and her daughter (albeit she used a stool), go to church, shop in stores and on the computer, watch TV and work puzzles, and do chores for over ten hours a week. (Tr. at 236-240). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). While Ms. Hooten said at the hearing that she needed a motorized scooter at Wal-Mart, she stated in June 2014 that she could walk through a store while leaning on a basket. (Tr. at 241) Inconsistencies between subjective complaints of pain and daily living patterns diminish credibility. *Id*.

While two doctors opined that Ms. Hooten could not work, she reported to her doctors that Lyrica was effective; also, she did not follow recommendations for physical therapy and weight loss, so those opinions are less persuasive. As well, the lack of objective testing to support those conclusions diminishes their effect. Importantly, Ms. Hooten's doctors' opinions on her ability to work involve an issue reserved for the Commissioner, and therefore are not entitled to controlling weight. *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004). The ALJ gave appropriate weight to medical opinions in assigning the RFC (while two state-agency medical consultants found Ms. Hooten capable of light work, the ALJ assigned the more restrictive sedentary RFC). (Tr. at 66, 91)

As for the argument that frequent fingering and handling were beyond Ms. Hooten's capabilities, the lack of recent objective testing to support that assertion militates against it. While Ms. Hooten underwent carpal tunnel surgery in 2006, Dr. Wolozyn noted she exhibited gross motor function in both hands in 2015, and she admitted to using a computer for shopping and working puzzles for fun. (Tr. at 385) She also testified that she did not have problems with her hands as long as she did not use the computer all day. (Tr. at 44) The ALJ's RFC determination was supported by the record as a whole.

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err in his RFC determination, and he gave appropriate weight to the medical opinions. The finding that Ms. Hooten was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 6th day of November, 2017.

_____
UNITED STATES MAGISTRATE JUDGE